UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

IN RE:

SHIRLEY G. PRICHARD                         Case No.  05-31759
    Debtor(s)

Chapter 7

---

MEMORANDUM-OPINION

---

THIS CORE PROCEEDING[1] is before the Court on the Chapter 7 Trustee Michael Wheatley's ("Trustee") Motion to Compel Turnover of Non-Exempt Estate Property, pursuant to Fed.R.Bankr.P. 7001(1), and the Debtor Shirley G. Prichard's ("Debtor") Objection to Trustee's Motion to Turnover $1,252.00 per month.  The Debtor seeks to exempt monthly annuity payments of $1,252.00 arising out of a personal injury action under KRS 427.150(2)(c), which allows a $7,500.00 exemption for payments received on account of personal injury, and KRS 427.150(2)(d), which allows a debtor to totally exempt payments made for compensation of future earnings that are reasonably necessary for the support of the debtor.[2]  Based upon the briefs submitted, statements of counsel, testimony of the Debtor and George Carter, Esquire, the attorney who negotiated Debtor's personal injury settlement, and the entire record in this case,

---

[1] 28 U.S.C. §157(b)(2)(B).

[2] The Debtor also initially alleged that the monthly payments were exempt under KRS 427.110(1).  The Debtor did not argue the applicability of this exemption in her pretrial compliance or at the evidentiary hearing.  Further, the Court, based on its own research, does not find this exemption applicable to the current case.  As such, this memorandum-opinion will focus solely on the applicability of KRS 427.150(2)(c) and (d).

1

this Court finds that $7,500.00 of the post-petition annuity payments are exempt under KRS 427.150(2)(c), but the remaining annuity payments are not exempt under KRS 427.150(2)(d).

Findings of Fact

Debtor was involved in a car accident in 1998 when a car insured by the Eastwood Volunteer Fire Department/Eastwood Fire Protection District("Eastwood") failed to stop at a stop sign and struck her car.  As a result of the accident, Debtor suffered two broken legs that required four surgeries and a year of recuperation and rehabilitation.  Approximately one year after the accident, the Debtor, represented by George Carter, Esquire, entered into a Settlement Agreement and Release ("Settlement") with Eastwood, in which Eastwood agreed to pay the Debtor a $75,000.00 lump sum, as well as $1,252.00 per month for twenty years.  The Settlement specifically states that "all sums set forth in the section entitled to 'Payments' constitute damages on account of personal physical injuries, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended."

At the time of the accident, Debtor was seventy-one years old, and worked two jobs earning approximately $11,000.00 per year.  During her year of recuperation, the Debtor was unable to work and spent a great deal of time in the hospital and a nursing home.  Debtor eventually was able to live on her own, but had to move to an apartment that was handicapped equipped.  Subsequently, Debtor moved into her own home, where she currently resides.

Following her recuperation, the Debtor, now age 78,  was able to resume working and currently earns approximately $600 net per month.  These earnings supplement her monthly social security income check of $813.00, from which approximately $70 is deducted for Medicare, and her monthly $1,252.00 annuity payment.

2

Debtor filed for Chapter 7 bankruptcy protection on March 18, 2005. Only two proofs of claim were filed in this case, a $75,325.37 secured claim on the Debtor's residence, and a claim for $24,566.46 for an unsecured nonpriority credit card.  The Debtor testified at the evidentiary hearing that she was forced to seek bankruptcy protection due to increases in utility prices and the rising cost of medications.

At the evidentiary hearing both the Debtor and George Carter testified.  The Debtor described the accident and the injuries she sustained as well as her current living and employment situations.  Mr. Carter testified that he negotiated the Settlement with the intent of providing the Debtor with enough money to supplement her income so that she could maintain a basic standard of living.

Conclusions of Law

Debtor wishes to utilize two provisions of the Kentucky Revised Statutes to exempt her post-petition annuity payments from the bankruptcy estate.  First, she seeks to use KRS 427.150(2)(c), which allows debtors to exempt from the bankruptcy estate a "payment, not to exceed seven thousand five hundred dollars ($7500), on account of personal bodily injury..." There is no dispute that the annuity in the case at bar is a payment received by the Debtor on account of personal bodily injury.  Therefore, $7,500 of the post-petition annuity payments are exempt under the personal bodily injury exemption in KRS 427.150(2)(c). The question is then whether the remaining annuity payments are exempt under KRS 427.150(2)(d).

Although a monetary cap is placed on money received for payments specifically earmarked for personal injury, KRS 427.150(2)(d) allows a debtor to exempt proceeds from payments intended to compensate for lost wages.  Specifically,  KRS 427.150(2)(d) allows a

3

debtor to exempt "a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary, for the support of the debtor and any dependent of the debtor."  Therefore we must determine if  any portion of the annuity payment in the present case is for compensation of future lost wages.

Both parties have cited *In re Menefee*, No. 03-51340(2) (Bankr. W.D. KY 2004).  In *Menefee,* the debtor successfully argued that two lump sum annuity payments stemming from a personal injury action were exempt under KRS 427.150(2)(d).  In that case, the debtor fell in the parking lot on her way to work and suffered a herniation in her neck and a herniated disk in her back.  She entered into a settlement agreement with her employer in which she received a specified amount of money payable over a period of time in exchange for absolving the other party of liability for pain and suffering, bodily injury, past and future medical expenses, past and future lost wages, among other claims. *Menefee*, No-03-51340(2).  This Court found that when the settlement agreement listed a number of claims but gave no indication as to how the annuity was allocated it could not speculate as to the allotments and impose its own judgment as to how the settlement was apportioned.  Further, the Trustee, who, pursuant to Fed.R.Bankr.P. 4003(c), bears the burden of showing that property is not exempt, did not provide any evidence that the annuity payments to Ms. Menefee were not, at least in part, for future lost wages.  As the Trustee could not meet his burden, the Court found that annuity payments were exempt under KRS 427.150(2)(d) because they were, at least in part, on account of future lost wages, and the Court could not speculate as to the exact apportionment.  *Id.*

The facts of the present case, however, are distinguishable from *Menefee.*  As opposed to *Menefee,* the Settlement in the present case clearly states that the payments are on account of

4

"personal physical injuries." The settlement agreement in *Menefee* stated that the annuity payments were for, among other claims, liability for pain and suffering, bodily injury, past and future medical expenses, and past and future lost wages. The current Settlement clearly states that the annuity is to compensate for "personal physical injuries." This Court may not find that the Settlement covers future lost wages when a plain reading of the document gives no such indication. Although Mr. Carter testified that his intent was to provide, at least in part, for Ms. Prichard's lost compensation, the plain language of the Settlement does not reflect this intention. As the Court was unable to speculate as to any underlying meaning of the settlement agreement in *Menefee,* this Court also cannot speculate as to the true purpose of the Settlement in the present case and insert words or intentions that are not evident from a plain reading of the document. *First American Natl. Bank v. Fidelity & Deposit Co. of Maryland,* 5 F.3d 982 (6th Cir. 1993) ("We cannot adopt any unexpressed meaning of the phrase merely to create ambiguity where none exists. The court is not authorized to pervert language or exercise its creative powers to find other meanings for a term expressed with sufficient clarity to reflect the parties' intent.") (internal citations omitted). Although this Court found that the testimony of Mr. Carter was credible, it cannot speculate as to underlying meanings of a document that is unambiguous on its face. The Court therefore finds that the annuity payments are properly characterized as payments on account of personal injury only, and, as such, only the first $7,500.00 post-petition payments are exempt.

The decision in this case does not end here, however. As a court of equity, this Court is bound to look at the particular circumstances of the case and fashion an appropriate remedy. Only two proofs of claim were filed in this case, a $75,325.37 secured claim on the Debtor's

residence which she has reaffirmed, and a claim for $24,566.46 for an unsecured nonpriority credit card.[3] There are approximately 165 payments remaining on the annuity and the total payments are well in excess of the unsecured claim.  This Court notes that the Debtor is the epitome of the "honest but unfortunate debtor" who is forced to file bankruptcy despite her best efforts, including continuing to work at the age of 78, to fulfill her financial obligations.  Further, this Court recognizes that the Debtor needs a certain amount of monthly income to maintain a basic standard of living, and directing all of the annuity payments to the Trustee would prevent Ms. Prichard from attaining even a basic standard of living.

Based on these factors and the Court's equitable powers under 11 U.S.C. §109, this Court finds that the post-petition annuity payments are exempt up to $7,500.00 under KRS 427.150(2)(c), but that the annuity payments in excess of $7,500.00 are not exempt under KRS 427.150(2)(d) because they are on account of personal injuries and not future lost wages.  The Court therefore ORDERS the Debtor is to remit to the Trustee $150.00 a month beginning April 20, 2006, and on the 20th day of ever month thereafter until the $24,566.46 is paid in full.[4]  If the Debtor should die prior to the debt being satisfied, the unpaid balance will immediately accelerate and the full monthly annuity payments must be forwarded to the Trustee until the debt is satisfied in full.

---

[3]The Debtor's child/children, who stand to step into her shoes under the Settlement in the event of her death, are not precluded from seeking to purchase the claim of Chase Manhattan Bank, a prepetition creditor, at a reduced amount should Chase Manhattan wish to accept an immediate payment.  See Fed.R.Bankr.P. 3001(e).

[4]At the evidentiary hearing the Trustee assured this Court that it was possible to keep the administration of a case open for an extended period of time.

A separate Order consistent with the foregoing has been entered in accordance with the Federal Rule of Bankruptcy Procedure 9021.